GREEN DITCH WATER CO. v. MONSON,

Secretary of State.

No. 6342.   Decided August 15, 1941.   (116 P. 2d 387.)

*Henry D. Moyle,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *Zar E. Hayes* and *Calvin L. Rampton,* Deputy Attys. Gen., for defendant.

LARSON, Justice.

Petition for a writ of mandamus against defendant as Secretary of State. In March, 1915, plaintiff was duly organized as an irrigation company and received its charter from the State of Utah. In April, 1916, the Secretary of State entered in his office an order declaring the charter forfeited for nonpayment to the state of the corporation license tax for the year 1915, as provided by Chapter 106, Laws of Utah 1909. In May, 1939, plaintiff sought to amend its articles of incorporation, and in so doing tendered the proposed amendments for filing in the office of the Secretary of State. Defendant refused to accept and file the amendment upon the ground that the company's charter had been forfeited and cancelled. The company petitions this court for a writ of mandamus to compel the Secretary of State to cancel and annul the entry of record in his office declaring the charter forfeited, and to accept and file the proposed amendment to its articles of incorporation. Defendant Secretary of State demurs to the petition and raises a single question for determination. Was the plaintiff, hereinafter called the company, subject to a corporation franchise tax for the year 1915? The statute imposes a corporation license tax upon:

"All domestic corporations (except corporation not organized for pecuniary profit, and all religious, charitable, benevolent, and all corporations organized for educational purposes, and all private water corporations organized for culinary purposes, and furnishing water exclusively to members of such corporations, and all canal and irrigation corporations engaged exclusively in furnishing water to or for lands owned by the members thereof, all water users' associations organized to comply with the rules of the United States Reclamation Service, and all insurance corporations) * * *." Laws of Utah 1909, Chapter 106, Section 2.

The statute exempts from the payment of the license tax:

(1) Corporations not organized for pecuniary profit,

(2) Corporations organized for religious, charitable or benevolent purposes,

(3) Corporations organized for educational purposes,

(4) Private corporations organized to supply water for culinary purposes, and furnishing water exclusively to its members.

(5) Canal and irrigation corporations engaged exclusively in furnishing water to lands owned by its members.

(6) Associations organized to comply with rules of the United States Reclamation Service.

(7) Insurance corporations

The company does not claim to come within groups 2, 3, 4, 6, and 7, but does claim to fall within both groups 1 and 5. If within either, it is exempt from the tax. Does the company come within group 5? It is alleged in the petition and admitted by the defendant that since the date of its incorporation, plaintiff has operated solely and exclusively under its said charter and for the sole and exclusive purpose of furnishing water to its members and to and for the lands owned by the members thereof; that said corporation has at no time been used for any other purpose; that it has at all times been maintained as a mutual water company, the expense of the operation of which has been borne by assessments duly levied against its members from time to time; that its officers and directors have for the most part served without compensation; that said corporation has been throughout its existence, a nonprofit corporation; that said corporation was not organized for pecuniary profit and has never operated as anything other than a corporation organized not for pecuniary profit.

Attached to the petition as part thereof is a copy of the articles of incorporation, Article 4, setting forth the objects of the corporation. It declares in a general statement that the business and pursuits of the corporation shall be, in substance, "to acquire by appropriation, purchase or otherwise, water rights and to sell, lease, exchange, distribute and dispose of all water and waterright for every purpose whatsoever and to acquire, own and sell reservoirs." It then specifically states the objects of the corporation to

be "to acquire title to the Green Ditch" with its easements etc.; "to acquire title to the water rights distributed through said ditch"; "to maintain and keep in repair the ditch; to control the distribution of the waters distributed through the ditch"; "to fix charges, and collect from its stockholders reasonable tolls, rentals and maintenance and service charges." The articles then provide that each share of stock shall represent the same specified proportion of the waters of the company; that the treasury stock can be disposed of only in exchange for water rights. (The capital stock was 2,280 shares, being the equivalent of all the water rights in the Green Ditch, of which 645.4 shares were subscribed by the incorporators, representing their proportion of the water rights. The remaining 1634.60 shares of treasury stock, representing the proportion of the waters in the ditch owned by persons not listed as original incorporators.) It is recited in Article 14 that the corporation has acquired title to the Green Ditch and all waters theretofore distributed through it in full payment of the full capital stock. Article 15 declares that no lands or water rights can be purchased or sold on behalf of the corporation except upon an affirmative vote of all the capital stock issued and outstanding, at a meeting called to consider such question.

We think the articles disclose that the company is a mutual irrigation company organized for the purpose of furnishing water to or for the lands of the members thereof.

There is another reason why this corporation was exempt from payment of the corporation license tax. Be it noted that all the exceptions from the tax provision as listed above, but one, have to do with corporations organized for certain purposes. The one exception is "canal and irrigation corporations, engaged exclusively in furnishing water to lands" owned by its members. The use of the term engaged exclusively in this instance, instead of the words organized for, used in describing the groups listed both before and after, cannot be accidental but must have been intentionally done to serve a

definite purpose. The corporation license tax act, enacted in 1907, c. 107, exempted inter alia "canal and irrigation companies organized for the express purpose of providing water for lands owned solely by the incorporators." In its application this would leave subject to the tax practically all mutual irrigation companies theretofore organized for distribution of water rights, maintenance of canals, and development of a further and supplemental water supply; also the irrigation companies organized for distribution purposes of water theretofore distributed for irrigation to the municipalities. It was recognized that most of such companies, under articles of incorporation with powers broad enough to engage in water dealings beyond its own membership, or for profit, never did, nor had any intention of doing so. In 1909 therefore, the act was amended to change the test as to canal and irrigation companies from the technical statement of the declared purposes of its incorporation to the practical interpretation of its business. If its revenue was confined to money received from its stockholders in proportion to their interest, it could have no profits and it would conduct no business from which the state sought to exact a license tax, because the state was then conferring no such privileges upon it. From their very nature, mutual irrigation companies differ from other private corporations, and yet they cannot well organize as an eleemosynary entity. It is evident that the legislature in 1909 sought to exempt from the license tax such canal and irrigation companies as confined their activities to providing water for their own memberships, regardless of the general language used in the articles. Furthermore, from what has already been said, it is clear that the company, whose only source of revenue is calls upon its stockholders in proportion to their interests, and they in turn would be entitled to any unused money in the same ratio, was not organized for pecuniary profit.

It follows therefore that the action of the Secretary of State in 1916, in cancelling and making an entry of cancel-

lation and annulment of the company's charter, was without authority of law, and was null and void. Let the peremptory writ issue commanding the Secretary of State to cancel and annul the forfeiture of the company's charter and file the amendment to its articles of incorporation. Each side to bear its own costs.

MOFFAT, C. J., McDONOUGH, and PRATT, JJ., concur.

WOLFE, Justice (concurring).

I concur on the ground that it is exempt under the fifth category of Chapter 106, § 2, Laws of Utah 1909, mentioned in the opinion.